**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

GREGORY DAVID STERLING, SR.,               *

Petitioner                                            *

v.                                                    *        Civil Action No. PJM-23-3229

STATE OF MARYLAND,                          *

Respondent                                          *
                                                 ***

<u>**MEMORANDUM OPINION**</u>

In answer to the above-entitled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Respondent seeks dismissal of the petition because the claims are not cognizable or are procedurally defaulted without a viable gateway to reach the merits of the claims.  ECF No. 10. Although the Court's Order directing a response provided self-represented Petitioner Gregory Sterling the opportunity to file a Reply, none has been received.  No hearing is necessary.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2023); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the reasons stated below, the Petition shall be denied and a certificate of appealability shall not issue.

## I.     Background

Sterling stood trial in the Circuit Court for Wicomico County on charges of attempted first degree murder, attempted second degree murder, first degree assault, second degree assault, and wear or carry a dangerous weapon with intent to injure in connection with the May 2, 2016 assault on Stephen Byrd.  During a two-day jury trial, the following facts were established.

Sterling was living on property located in Fruitland, Maryland, where Stephen Byrd maintained a consignment shop selling second-hand household items and equipment.  ECF No.

10-21 at 26 - 27.  Sterling was living in a trailer located on the property and performed some work for Byrd around the property for which he received $40 per day.  *Id*. at 29 - 30.  Byrd explained that he met Sterling when he came into the shop to buy a bicycle so that he could find work; at the time Sterling was homeless and living in the woods adjacent to Byrd's property.  *Id*. at 29; ECF No. 10-22 at 85.

Approximately three months before the incident at issue at trial, a dispute arose between Sterling and Byrd in which Byrd accused Sterling of stealing $9000 from him.  ECF No. 10-22 at 88 - 89.  The two men were drinking at the American Legion and engaged in fisticuffs.  *Id*.  Sterling maintained that Byrd had beaten him about the head and face, injuring him but that he decided not to press charges against Byrd.  *Id*. at 92 - 94.   According to Sterling, Byrd gave him a car to rehabilitate in exchange for Sterling declining to press charges.  *Id*. at 93.

On the morning of the May 2, 2016 incident, Byrd drove onto the property in his jeep at 7:30 a.m., pulling a trailer behind his vehicle.  ECF No. 10-21 at 32 - 34.  Byrd explained that he normally carries large amounts of cash with him for the purpose of buying items from people selling personal property to him, all of whom were only interested in being paid in cash.  *Id*. at 33.  Sterling was aware of this practice.  *Id*.  Byrd testified that Sterling approached him, stated he was going to rob him and kill him, and stabbed him in the stomach with a machete.  *Id*. at 37 - 39.  In an effort to get Sterling to stop his attack, Byrd took money out of his pocket which Sterling knocked out of his hand to the ground.  *Id*. at 42.  The effort was ineffective as Sterling continued to strike and stab Byrd with the machete while Byrd attempted to flee to his car.  *Id*. at 39 - 40.  To escape the onslaught, Byrd crawled underneath the trailer that he had towed onto the property.  *Id*. at 40.  By that time, Byrd had suffered ten stab wounds, was bleeding profusely, and was having difficulty breathing.  *Id*. at 41.  A passerby, Kurt Cook, who lived nearby, stopped at the scene

because Byrd had come out from under the trailer and Cook could see that he was bleeding and injured. *Id*. at 42. Cook threatened to run Sterling over if he did not stop approaching Byrd who was now attempting to get into Cook's vehicle. *Id*. at 45 - 46. Cook called 911 for assistance and stayed with Byrd, who had collapsed to the ground, too weak to get into the car.

Sterling testified in his own defense and maintained he had acted in self-defense. He claimed that Byrd was supposed to give the machete to Sterling to use to cut branches at the back of the property, but when he arrived, Byrd began accusing him of stealing $9000 from him and threatened to fire him. ECF No. 10-22 at 104. Sterling said he would report Byrd for selling drugs if he fired him which angered Byrd. *Id*. Sterling claimed that Byrd threatened to kill him and tried to attack him with the machete, but Sterling thwarted the attack by throwing Byrd to the ground, causing him to drop the machete. *Id*. at 104 - 5. According to Sterling, Byrd then picked up a claw hammer to use as a weapon to assault Sterling. *Id*. at 105 - 6. To keep Byrd from harming him, Sterling claimed he stabbed Byrd once in the stomach and continued to "poke" him when he did not stop pursuing him. *Id*. at 106 - 7. When Cook arrived on the scene, Sterling claimed he was trying to convince Byrd to come out from under the trailer because he was likely to bleed to death. *Id*. at 107. When Cook and Byrd told Sterling to leave, Sterling protested that he was owed a day's wages. *Id*. at 110. According to Sterling, this was when Byrd took out $66 to give to Sterling in payment for his work and, because Byrd said he was fired, Sterling left the area. *Id*. at 110 - 11. Sterling picked up the bloody cash Byrd had thrown on the ground and fled to the nearby woods with the machete still in hand. *Id*. at 111.

Sterling was apprehended by Fruitland Police soon after emergency personnel had arrived on the scene. ECF No. 10-21 at 163 - 65. The machete was located in the woods where Sterling had fled; it was stuck into the ground up to the hilt. ECF No. 10-22 at 44 - 45. Also located in the

vicinity where Sterling was apprehended was the jacket he was wearing which was bloodied during the assault. *Id*. at 46 - 47. Byrd suffered numerous life-threatening injuries which included a collapsed lung, perforated stomach, lacerated diaphragm, and a kidney that was so badly lacerated it had to be removed. *Id*. at 5-11. He required 20 units of blood during his hospitalization. *Id*. at 13. Sterling suffered a minor scratch on his back likely caused by his trek through the woods following the assault. ECF No. 10-21 at 144 - 45. During his interactions with hospital staff Byrd told them the name of his assailant was Gregory Sterling but did not state that Sterling had threatened to rob him. *Id*. at 229 - 30.

Sterling stood trial twice. In the first trial, Sterling represented himself after discharging the assigned assistant public defender. *See* ECF Nos. 10-13; 10-14; 10-15. Sterling did not testify during this trial. He was convicted on all counts and sentenced to life in prison for attempted first-degree murder. ECF No. 10-16 at 63 - 64. On appeal, the Appellate Court of Maryland reversed the conviction and remanded the matter to the Circuit Court for a new trial after finding that the State's Attorney inaccurately advised Sterling of the maximum penalty for attempted murder. *See* ECF No. 10-1 at 131-39; *Sterling v. State*, No. 105, Sept. Term 2019, 2019 WL 2513351 at *3 – 4 (Md. App. June 11, 2019).

Sterling's second trial occurred on December 11 and 12, 2019. Sterling took the stand to testify in this trial in an attempt to generate evidence to support a claim of self-defense. ECF No. 10-22 at 84 - 116. It was Sterling's understanding, and that of defense counsel, that his prior convictions, which were more than 15 years old could not be used to impeach him during cross examination. *Id*. at 77 - 80. A bench conference regarding the use of Sterling's prior convictions took place prior to Sterling taking the stand. The trial court explained the discussion among counsel to Sterling:

> Sir, what she is explaining to you is that if you have been convicted of an
> infamous crime or crime relevant to your credibility, it may be brought out
> against you during testimony but only if the Court determines that the probative
> value of admitting the evidence outweighs the danger of unfair prejudice.  But I
> believe all of your impeachable – so-called impeachable offenses are over 15
> years old.

ECF No. 10-22 at 79.

During cross-examination Sterling was asked why, in a letter written to the court and the

State's Attorney's office, he had explicitly relinquished any ownership of the $66 found in his

possession when he was arrested if that money was paid to him as wages.  *Id*. at 192.  Sterling

became agitated frequently during cross-examination and, in his frustration, gratuitously offered

that he had never taken anything that did not belong to him.

> I wanted to set the record clear.  I wasn't trying to take nothing that weren't
> mine.  I didn't want nothing, never did, take anything that weren't mine. I earned
> that money ... He gave it to me, yes.  But in my mind, I wanted the Court to
> know of what really happened.  I had to put it out like that … the Court will not
> see that he handed me $66.

ECF No. 10-22 at 193.

The State's Attorney then approached the bench with defense counsel and maintained that

Sterling had "opened the door" for the State to ask him about a robbery conviction because he

claimed he never took anything that did not belong to him.  *Id*. at 194.  The trial court observed

that it was "pretty clear he has opened the door on that one" and permitted the State to "ask him if

he has ever been convicted of armed robbery," over defense counsel's objection that it was "outside

of the scope of impeachment."  *Id*. at 194 - 95.

On direct appeal, the sole issue raised by Sterling was whether the trial court erred when it

allowed the State to use his armed robbery conviction to impeach him when the conviction was

forty years old.  ECF No. 10-1 at 148-80 (Appellant's Brief).  The Appellate Court of Maryland

affirmed the conviction on December 7, 2021.  *Id*. at 232-319.  The mandate issued on January 11, 2022; Sterling did not seek certiorari review from the Supreme Court of Maryland.

On March 24, 2022, Sterling filed a petition for post-conviction relief claiming that the State's Attorney engaged in misconduct by raising Sterling's robbery conviction at trial; that trial counsel was ineffective for failing to file a motion in limine to preclude the State from introducing evidence of Sterling's prior robbery conviction; failing to provide Sterling with all discovery; and failing to effectively represent him at trial.  ECF No. 10-1 at 251.  On January 13, 2023, an amended post-conviction petition was filed by Sterling's counsel which raised a claim that trial counsel was ineffective for failing to object to certain statements that were improper and impermissibly shifted the burden of proof onto the defense during the State's closing argument.  *Id*. at 253-67.

On March 24, 2023, the Circuit Court for Wicomico County held a post-conviction hearing.  During the post-conviction hearing Sterling raised a claim that trial counsel was ineffective by failing to properly advise him on the ramifications of "opening the door" when he discussed on cross-examination his lack of propensity to commit armed robbery.  ECF No. 10-1 at 291, *see also* ECF No. 10-24 at 27 (post-conviction transcript).  In a June 29, 2023 memorandum opinion and order, post-conviction relief was denied.  ECF No. 10-1 at 286-306.

In his pro se application for leave to appeal the denial of post-conviction relief Sterling stated that he did not dispute that post-conviction counsel failed to carry his burden to demonstrate that trial counsel was ineffective and agreed with the State court's decision to deny post-conviction relief.  ECF No. 10-1 at 308.  He asked that the Appellate Court grant him a new post-conviction hearing based on what he called "appointed counsel's 'deficient' performance'" that prejudiced his claim for post-conviction relief.  *Id*., *see also* 310-16.

In a November 2, 2023 per curiam opinion, the Appellate Court of Maryland denied Sterling's application for leave to appeal.  ECF No. 10-1 at 317-19.

Sterling filed his Petition for Writ of Habeas Corpus in this Court on November 18, 2023. ECF No. 1.  He claims both trial counsel and post-conviction counsel were ineffective.  He alleges trial counsel was ineffective when she failed to file a motion for pre-trial psychiatric evaluation (ECF No. 1 at 5); failed to investigate his mental health history before trial (ECF No. 1-1 at 13); failed to enter a plea of Not Criminally Responsible ("NCR") and misled him by saying such a plea would be useless (*id*.); improperly advised him that he did not need a copy of the State's discovery because she would be presenting the case (*id*. at 14); failed to subpoena 15 witnesses involved in the case, including the victim's daughter who told hospital staff that her father was an alcoholic, as well as various police officer, paramedics, and a nurse (*id*.); failed to vigorously defend him by producing facts regarding his mental status at the time of the incident (*id*.); and failed to "file for impeachment of the victim" under Md. Rules 5-404, 5-616, and 5-609(b) (ECF No. 1 at 5).  Sterling additionally alleges that his post-conviction counsel rendered ineffective assistance of counsel by using "bald allegations" of ineffective assistance of counsel that was unsupported by any evidence (ECF No. 1-1 at 2); and by refusing to tell the judge about trial counsel's failure to enter an NCR pleas as he requested (*Id*. at 5).

## II.    Discussion

Preliminary to reaching the merits of Sterling's claims, this Court must first determine whether his claims state a cognizable federal constitutional claim; or whether any of his claims have been procedurally defaulted and, if so, whether Sterling satisfies any of the gateway exceptions that allow this Court to reach the merits of those claims.

### A.    Cognizability

Absent violation of a constitutional right or federal law, a federal habeas petitioner fails to state a cognizable claim for relief.  *Wilson v. Corcoran*, 562 U.S. 1, 1 (2011) (holding courts may not issue writs of habeas corpus to prisoners whose confinement does not violate federal law."); *Spencer v. Murray*, 18 F.3d 267, 239-40 (4th Cir. 1995) (holding where petitioner alleged error in admissibility of evidence, without reference to any constitutional right infringed, petitioner failed to state a claim).  Here, Sterling raises claims that his post-conviction counsel was ineffective. Such a claim does not state a violation of a federal constitutional right or federal law.  There is no recognized constitutional right to pursue post-conviction relief.  *See Shinn v. Ramirez*, 596 U.S. 366, 382-83 (2023) (post-conviction counsel's negligent failure to develop the state record is attributed to the prisoner-petitioner because there is no federal right to post-conviction).  "[A] prisoner 'bears the risk in federal habeas for all attorney errors made in the course of the representation' unless counsel provides 'constitutionally ineffective' assistance." *Shinn*, 596 U.S. at 383, quoting *Coleman v. Thompson*, 501 U.S. 722, 754 (1991) and *Murray v. Carrier*, 477 U.S. 478, 478, 488 (1986).  A negligent failure by post-conviction counsel to develop the record is a failure that is attributable to the prisoner.  *Holland v. Jackson*, 542 U.S. 649, 650-51 (2004).  Thus, Sterling's claims that post-conviction counsel rendered ineffective assistance of counsel (ECF No. 1-1 at 2, 5, and 7) must be dismissed as non-cognizable.

## B.     Procedural Default

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies.  *See Coleman*, 501 U.S. at 749-50 (failure to note timely appeal); *Murray*, 477 U.S. at 489-91 (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim

during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Thus, a procedural default may occur by failure to raise the claim in all appropriate State court forums, or if the State court's ruling was based on an adequate and independent State law ground. "The principle that we will not review judgments of state courts that rest on adequate and independent state grounds, is based, in part, on the 'limitations of our own jurisdiction.'" *Michigan v. Long*, 463 U.S. 1032, 1041-42 (1983) quoting *Herb v. Pitcairn*, 324 U.S. 117, 125, (1945), *see also Harris v. Reed*, 489 U.S. 255, 263 (1989) (where "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar" a procedural default has occurred).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim

in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

Additionally, habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court instructed that a federal habeas court faced with an actual innocence claim should not count unjustifiable delay as an absolute barrier to relief, but it should be weighed as a factor in determining whether actual innocence has been reliably established. *Id.* at 399. In addition, the Court cautioned that "tenable actual-innocence gateway claims are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 386, quoting *Schlup*, 513 U.S. at 329. The *Perkins* decision did not create a new right to habeas review, nor did it change existing law. Rather, it simply clarified the "actual innocence" standard as a gateway to habeas corpus review.

"'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson,* 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324 (1995)). New evidence may consist of "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v.*

*Anderson*, 188 F.3d 635, 644 (5th Cir.1999) (citation omitted).   The new evidence must be evaluated with any other admissible evidence of guilt.   *Wilson v. Greene*, 155 F.3d 396, 404-05 (4th Cir.), *appl. for stay and cert. denied sub. nom. Wilson v. Taylor*, 525 U.S. 1012 (1998).   The new evidence must do more than undermine the finding of guilt; it must affirmatively demonstrate innocence.   *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir.1999).

Application of the well-established law to Sterling's claims supports Respondent's conclusion that Sterling's claims regarding trial counsel's failure to prepare evidence in support of an NCR plea and failure to enter an NCR plea[1] is procedurally defaulted and Sterling fails to allege that this Court's failure to reach the merits of those claims would result in the continued incarceration of one who is actually innocent or would otherwise result in a fundamental miscarriage of justice.

Sterling alleges that trial counsel failed to investigate and gather vital evidence pertaining to his mental health history and should have done so by contacting the Somerset County Department of Mental Health.   ECF No. 1-1 at 13.   Such an investigation would have revealed that Sterling had a significant history of psychiatric hospitalizations.   *Id*.   According to Sterling the purpose of such an investigation would be to "determine if -- at the time the crime occurred – due to the defendant being high on crack cocaine, and alcohol – did it cause him to not be in his right state of mind and temporarily insane."   *Id*.   Sterling adds that counsel's failure to enter the requested NCR plea was based on her "misleading" observation that such a plea would be "useless."   *Id*.

This claim was never presented to any of the State courts that reviewed Sterling's

---

[1]       Sterling states these claims as failure to file a motion for pre-trial psychiatric evaluation (ECF No. 1 at 5); failure to investigate his mental health history (ECF No. 1-1 at 13); failure to enter a plea of NCR and improperly advising it would be a useless strategy (*id.*); and failure to produce facts regarding his mental status at the time of the incident (*id.* at 14).

conviction.  As such, it is not exhausted and, because such a claim would normally be raised in a post-conviction petition and Sterling has already filed and litigated the one post-conviction petition he is allowed under Maryland law, the claim is procedurally defaulted.  While Sterling may attempt to raise this claim in a second post-conviction petition, the attempt will fail under existing Maryland law.  *See State v. Syed*, 463 Md. 60, 103, 204 A.3d 139, 164 (Md. App. 2019)[2] (finding that the failure to raise all claims available in the first post-conviction petition results in waiver of any claims not raised at that time).  The absence of State corrective process means this claim is procedurally defaulted.

This Court's inquiry does not stop after determining that claims are procedurally defaulted.  As outlined above, there must be inquiry into whether there has been cause for Sterling's failure to raise the claims regarding competency to stand trial, an NCR plea, and voluntary intoxication, and whether he has been prejudiced by that failure.  As noted, cause must consist of "some objective factor external to the defense that impeded counsel's efforts" to raise the claim in State court proceedings at the proper time.  *Breard*, 134 F.3d at 620.  To the extent that Sterling relies heavily on post-conviction counsel's failure to raise this claim, his petition invokes analysis under *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).  In that case the United States Supreme Court recognized a "narrow exception" to "the constitutional rule that there is no right to counsel in collateral proceedings," holding that inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel.  *Id.*  The Court reasoned that "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's

---

[2] The Maryland Court of Appeals is now known as the Supreme Court of Maryland.

claims" and such collateral proceedings are "in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance [of counsel] claim." *Id.* at 11.

However, the *Martinez* Court made clear that its holding did not overturn *Coleman,* nor did it expand the availability of relief for ineffective assistance of counsel in post-conviction proceedings beyond initial-review collateral proceedings. *See id.* at 16 (explaining that "*Coleman* [*v. Thompson*, 501 U.S. 722 (1991)] held that an attorney's negligence in a post-conviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial" and noting that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here"). The Court went on to state explicitly that its "holding ... [did] not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings*,* and petitions for discretionary review in a State's appellate courts." *Id.* (internal citations omitted). However, the Court explained that:

> [T]here are sound reasons for deferring consideration of ineffective-assistance-of-trial-counsel claims until the collateral-review stage, but this decision is not without consequences for the State's ability to assert a procedural default in later proceedings. By deliberately choosing to move trial-ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners' ability to file such claims. It is within the context of this state procedural framework that counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default.

*Id*. at 13. Maryland defers consideration of ineffective assistance of counsel claims to the single post-conviction proceeding provided under the Uniform Post-Conviction Procedure Act ("UPPA"), Md. Code Ann., Crim. Proc. § 7-103, placing Sterling's claim squarely within the purview of the exception carved out by *Martinez*.

The Supreme Court has delineated four requirements for federal habeas petitioners to

satisfy in order to establish that ineffective assistance of post-conviction counsel is cause to excuse a procedural default.  Under *Coleman* and *Martinez* the Court stated that "a federal habeas court may find cause . . . excusing a defendant's procedural default, where (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law requires that an 'ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding.'"  *Trevino v. Thaler*, 569 U.S. 413, 423 (2013).  Respondent does not dispute that Sterling's case satisfies the third and fourth prong for a *Martinez* claim but states he cannot satisfy the first and second prong.

When a petitioner raises a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors.  *Id.* at 696.

Because the instant petition is subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("Act"), in order to obtain relief on his ineffectiveness claims, the petitioner must show that the adjudication of such claims at the state court level:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(Supp.1997).  The Act further provides that:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

§ 2254(e)(1).

As the Supreme Court held in *Strickland*, *supra*, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d) [now § 2254(e)(1)]." *Id*. at 698.  Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.*  It follows, then, that § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.

Sterling bases his claim of ineffective assistance of post-conviction counsel on the failure to raise a claim that trial counsel should have investigated the possibility of having Sterling evaluated for competency to stand trial (ECF No. 1 at 5) and the failure to enter an NCR plea on his behalf due to his intoxication (*id*. and ECF No. 1-1 at 5).  Scrutiny under the first prong of *Strickland* leads to the inevitable conclusion that neither trial counsel nor post-conviction counsel

rendered defective performance in this regard.

There was never any indication that Sterling was not competent to stand trial. A finding of not competent to stand trial requires the trial court to "assess the defendant's *current* mental health status to determine whether the defendant is able to understand the proceedings and assist in the defense." *Aleman v. State*, 469 Md. 397, 415 (2020) (emphasis in original). Nothing in this record suggests that Sterling did not understand the proceedings or that he was unable to assist in his defense. Rather, the transcripts reflect that Sterling was able to represent himself in the first trial. While he was not successful in doing so, there was never any indication that he did not understand the nature of the proceedings, or he did not understand the law. Prior to the first trial Sterling filed several pro se motions seeking to discharge his assigned public defender because he had not filed motions that Sterling asked him to file and had not hired a private investigator to investigate the prior altercation Sterling had with Byrd at the American Legion in Hebron, Maryland. ECF No. 10-7 at 5. Sterling also asked for a change of venue due to the press coverage of the incident and, ultimately, the trial court found that Sterling waived his right to counsel and allowed Sterling to proceed pro se. *Id*. at 7, 24. In his pro se representation Sterling was able to file motions seeking transcripts of body camera video and the 911 call and to ensure he had received all of the discovery materials from the State. ECF No. 10-9.

At his second trial Sterling was represented by counsel. At this time, he had the wherewithal to move for a mistrial because he did not like the fact that counsel was not presenting the evidence he had provided to her to present on his behalf. ECF No. 10-21 at 168 – 79. Disagreement with his attorney does not, alone, indicate that Sterling was not competent to stand trial. While a criminal defendant's "behavior at trial may be described as stubborn and argumentative" if he responds "appropriately to the judge's questions and his defense was in no

way aberrant for a pro se defendant" he has demonstrated a "rational understanding of the proceedings in which he was involved and of the relevant facts."  *Gregg v. State*, 377 Md. 515, 527 (2003).  Thus, the failure to seek a determination that Sterling was not competent to stand trial, when there was no evidence of his incompetency, was not deficient performance.

The failure to investigate the possibility of entering a plea of NCR and to later enter such a plea, also finds no support in the record of this case as being deficient.  Under Maryland law a "defendant is not criminally responsible for criminal conduct if, at the time of that conduct, the defendant, because of a mental disorder or an intellectual disability, lacks substantial capacity to: (1) appreciate the criminality of that conduct; or (2) conform that conduct to the requirements of law."  Md. Code Ann., Crim. Proc. § 3-109.  Here, Sterling asserts that his diagnostic history of schizoaffective disorder and chronic schizophrenia, as noted in his Pre-Sentence Investigation ("PSI") Report, should have been used as evidence to support an NCR plea.  ECF No. 1 at 5-6; ECF No. 6 at 11-12, 14-15.  Sterling adds another layer to his claim that an NCR plea was appropriate by alleging that his intoxication on crack cocaine and alcohol rendered him temporarily insane.  ECF No. 1 at 5.  Sterling's claim that he was experiencing "a substance-induced psychosis during the offenses" must have "resulted in a 'settled' disorder" to support a finding that he was not criminally responsible.  *Currie v. State*, 251 Md. App. 45, 76 (2021), citing *State v. Johnson*, 143 Md. App. 173, 179-81 (2002).  This means that the disorder "result[ed] from continued or persistent use [of intoxicants], and exists even after the chemical agent was no longer present in the individual's blood stream."  *Id*., *see also Fields v. State*, 2022 WL 4103076, *8 (Md. Ct. of Spec. App. Sept. 8, 2022) (holding that "voluntary intoxication that causes a temporary state of insanity while the defendant is under the direct influence of the intoxicant, but which ends when the intoxicating effect wears off, does not excuse responsibility for a criminal act."); *Cirincione v.*

*State*, 75 Md. App. 166, 175 (1988) (generally voluntary intoxication "affords no excuse, justification or extenuation of a crime committed under its influence.").

Sterling was charged with attempted first-degree murder which requires the State to prove specific intent. *Cirincione*, 75 Md. App. at 175 ("any attempt requires proof of a specific intent to perpetrate the crime attempted."). Voluntary intoxication that is "sufficient to erode existence of a specific intent" may be used as a defense to a specific intent crime. *Id.* "A defendant is not entitled to an instruction on voluntary intoxication unless he can point to some evidence that would allow a jury to rationally conclude that his intoxication made him incapable of form[ing] the intent necessary to constitute the crime." *Bazzle v. State*, 426 Md. 541, 555 (2012) (internal quotation marks omitted) (brackets in original). During both of Sterling's trials he described in great detail all of the events that occurred during the incident. When he was representing himself, he gave a lengthy opening statement describing the time he woke up, the work he was engaged in when Byrd arrived, the reason he had the machete, and he recalled that Byrd gave him $66 while he ordinarily had approximately $5,000 in cash with him. ECF No. 10-13 at 173 - 203 (defense opening statement, first trial). When Sterling took the stand during his second trial, he testified at length about the history between Byrd and himself, including an altercation that occurred at the American Legion after Byrd accused him of stealing $9,000. ECF No. 10-22 at 84-116. Sterling also testified that Byrd had raised the machete up as though he were going to assault him with the machete, but Sterling grabbed him around his waist and threw him to the ground which allowed him to get control over the machete. *Id.* at 105. At both trials, Sterling was adamant that Byrd was the first aggressor and that he was merely defending himself to keep Byrd from hitting him in the head with a hammer.

The detailed, lucid recollection of the events that occurred between Sterling and Byrd

demonstrates that he was not so intoxicated that he was incapable of forming the requisite intent for attempted first-degree murder. His trial counsel for the second trial had access to the transcripts of Sterling's first trial and would have had an impossible task explaining why Sterling did not pursue an NCR defense in his first trial. *See* Md. Rule 4-242(b)(3) (NCR plea must be entered at the time the defendant initially pleads, unless good cause is shown). Sterling's entire theory of the case was that he was defending himself against an attack Byrd had started. A plea of NCR or a voluntary intoxication defense is inconsistent with a claim of self-defense. In the former two defenses the object is to show that the defendant did not appreciate the criminality of his behavior. In a self-defense claim, the object is to show that the defendant *reasonably* feared for his life and acted to thwart an imminent threat to his life. Sterling's eleventh-hour attempt to find fault with his trial and post-conviction attorneys for failing to mount a defense for which there was no factual basis is specious and the failure to raise it at trial or post-conviction was not deficient performance.

It would seem that if it is not deficient performance on the part of trial counsel to fail to raise a particular defense, it is axiomatic that post-conviction counsel's failure to raise an ineffective assistance of counsel claim is also not deficient performance. However, for purposes of the *Martinez* analysis, post-conviction counsel's performance pursuant to the *Strickland* standard must also be examined. "Under *Martinez*, a prisoner may establish cause where his post-conviction counsel was constitutionally ineffective in failing to raise and exhaust a claim of 'ineffective assistance of trial counsel' where the State "effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal.'" *Moore v. Stirling*, 952 F.3d 174, 181-82 (4th Cir. 2020), quoting *Davila v. Davis*, 582 U.S. 521, 525 (2017).

At its core, Sterling's argument regarding post-conviction counsel is that counsel did not do what Sterling demanded that he do. However, it has never been a constitutional requirement

that post-conviction counsel raise every non-frivolous claim available; rather, counsel is charged with the duty to select the strongest arguments available for litigation. No "decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Yet deference to the decisions of counsel is not limitless. Attorneys have a duty to investigate their client's case so as to enable them to make professional decisions that merit distinction as "informed legal choices." *See Elmore v. Ozmint*, 661 F.3d 783, 858 (4th Cir. 2011).

Post-conviction counsel had access to the same transcripts that make up the record before this Court. As noted, review of those transcripts makes plain that the failure to raise a defense of not criminally responsible, or voluntary intoxication, or some combination of the two would not amount to deficient performance. Post-conviction counsel's decision not to dilute the alleged errors raised with other claims that were not likely to succeed does not amount to ineffective assistance of counsel. Thus, "cause" has not been established for Sterling's procedural default. Because Sterling's ineffective assistance of counsel claim is without merit, he also cannot demonstrate prejudice; there is no reasonable probability that a jury would have rendered a different verdict had counsel presented either a voluntary intoxication defense or a plea of NCR. Sterling also does not raise a claim of actual innocence to excuse the procedural default and has therefore failed to satisfy that gateway for this Court to review his procedurally defaulted claims.

Sterling also claims that trial counsel erred when she advised him he did not need a copy of the State's discovery because she would be presenting the case and there was nothing he needed to study. ECF No. 1-1 at 14. He also claims that trial counsel rendered ineffective assistance of counsel when she failed to subpoena 15 witness who were involved in the case, including Byrd's

daughter who told hospital staff that her father was an alcoholic. He further alleges it was error to fail to subpoena 14 police officers, paramedics, and a nurse. *Id*. Lastly, he claims that trial counsel's failure to "file for impeachment of the victim" under Md. Rules 5-404, 5-616, and 5-609 (b) amounted to ineffective assistance of counsel. ECF No. 1 at 5.

These claims are also unexhausted and procedurally defaulted under the standards outlined above. Sterling did not raise any of these ineffective assistance of counsel claims in his application for leave to appeal the denial of post-conviction relief with the Appellate Court of Maryland. He does not and cannot fault post-conviction counsel for this failure and does not allege any external factor was the cause of his failure to present these claims in his application for leave to appeal. Rather, Sterling chose to concede that the post-conviction court's decision was correct and faulted his attorney instead. As Respondent aptly notes, Sterling's post-conviction counsel cannot be blamed for his failure to include these claims in his application for leave to appeal because the pleading was written and filed by Sterling himself. Further, to be clear, nothing in the record of this case raises even a suspicion that a manifest injustice would occur if Sterling's claims were not considered on their merits.

## III.  Certificate of Appealability

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Sterling may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th

Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.


__8/22/2024_____
Date

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE